**In re GRAND JURY SUBPOENA DUCES TECUM, 91–02922.**

No. 92–6039.

United States Court of Appeals, Eleventh Circuit.

Feb. 25, 1992.

Joe R. Whatley, Jr., Samuel H. Heldman, Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, Ala., for appellant.

Before FAY, KRAVITCH and BIRCH, Circuit Judges.

BIRCH, Circuit Judge:

Appellant Richard Arrington, Jr., the Mayor of the City of Birmingham, Alabama, appeals from an order finding him in contempt of court. On December 12, 1991, the Mayor was served with a subpoena duces tecum in connection with a federal grand jury investigation. The subpoena required Mayor Arrington to produce certain documents relating to the Mayor's official calendar and scheduled appointments. The Mayor adamantly refused to produce the requested documents.

After briefing and argument, the United States District Court for the Northern District of Alabama ordered the Mayor to produce the subpoenaed documents. This order of the district court, dated January 2, 1992, compelled the Mayor to surrender the requested materials at the next scheduled

session of the grand jury. Again Mayor Arrington refused to comply. On January 16, 1992, the district court ordered the Mayor to show cause why he should not be held in contempt. After a hearing on January 17, the district court found that the Mayor's refusal to produce the subpoenaed documents constituted contempt of court.

In order to elicit compliance with its January 2 order, the district court tailored a civil contempt remedy under the statutory guidelines of 28 U.S.C. § 1826 (1988). The court imposed a $1000.00 per day fine for the first seven days that Mayor Arrington persisted in his recalcitrance. Should the Mayor not produce the documents within these seven days, the district court ordered that he be confined for every weekend thereafter that he continued to disobey the January 2 order. Mayor Arrington's incarceration was slated to begin on Thursday evening, January 23, 1992. Both this court and the Supreme Court denied the Mayor's emergency motion for a stay pending this appeal.

Mayor Arrington refused to produce the subpoenaed documents for the entire seven-day fine period, thereby accruing a $7000.00 fine. As scheduled, the Mayor was incarcerated on January 23, 1992. He remained in prison for one day. On January 24, 1992, the Mayor surrendered the requested documents. The district court entered an order stating that Mayor Arrington had fully complied with its January 2 order, completely purging himself of the contempt finding rendered on January 17.

On appeal, Mayor Arrington challenges the district court's contempt order and the propriety of the $7000.00 fine. The Mayor asserts that the contempt adjudication is invalid because he had "just cause" for not complying with the grand jury subpoena and the district court's January 2 order. *See* 28 U.S.C. § 1826(a) (1988). We cannot decide whether or not the Mayor had just cause excusing his refusal to produce the documents because Mayor Arrington mooted this issue by surrendering the materials and purging his contempt. With respect to

the propriety of the fine, we conclude that under the facts of this case, a seven-day fine of $1000.00 per day was a reasonably coercive sanction. Accordingly, we DISMISS the moot portion of this appeal and AFFIRM the Mayor's $7000.00 fine.

## I.

■ In asserting that he had just cause for his noncompliance with the January 2 order, Mayor Arrington advances several arguments. The Mayor contends that (1) he does not need to surrender the subpoenaed documents because production would violate his Fifth Amendment protection against self-incrimination, (2) he does not need to surrender the subpoenaed documents because the subpoena's breadth violates the Fourth Amendment, (3) he does not need to surrender the subpoenaed documents because he possesses a First Amendment right to refuse to disclose documents revealing his political associations,[1] (4) he does not need to surrender the subpoenaed documents because the prosecuting attorneys involved in the grand jury proceedings are personally biased against the Mayor, (5) he does not need to surrender the subpoenaed documents because the prosecutors in this case have been selectively targeting elected African–Americans in general and Mayor Arrington in particular, and (6) he does not need to surrender the subpoenaed documents because the investigation allegedly derives from illegal electronic surveillance of the Mayor's communications.

We find each of these arguments to be moot. The Mayor has already surrendered all of the requested documents. In doing so, he extinguished his ability to appeal his contempt adjudication on the basis that he need not surrender the requested documents. If we were to decide whether a contemnor can justifiably ignore a subpoena in a case where a subpoena is not being ignored (and the contemnor is no longer a contemnor), this court would violate the constitutional prohibition against "decid[ing] abstract, hypothetical or contingent

---

**1.** Appellant City of Birmingham, Alabama, also alleges that it has an independent interest in

preserving the citizenry's ability to associate privately with the Mayor.

questions." *Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725 (1945). Because we lack the constitutional power to render a decision on a moot issue, *see, e.g., Benton v. Maryland*, 395 U.S. 784, 788, 89 S.Ct. 2056, 2059, 23 L.Ed.2d 707 (1969),[2] we dismiss that portion of the Mayor's appeal which asks us to rule that the Mayor may refuse to comply with the district court's January 2 order.

The weight of authority supports our decision. In the context of purely coercive civil contempt, a contemnor's compliance with the district court's underlying order moots the contemnor's ability to challenge his contempt adjudication. "A long line of precedent holds that once a civil contempt order is purged, no live case or controversy remains for adjudication." *In re Campbell*, 628 F.2d 1260, 1261 (9th Cir.1980) (per curiam) (citing cases).[3] *Accord United States v. Friedrick*, 872 F.2d 779, 779 (6th Cir.1989); *Cordero v. De Jesus-Mendez*, 867 F.2d 1, 21 (1st Cir.1989); *United States v. Griffin*, 816 F.2d 1, 7 n. 4 (D.C.Cir.1987); *In re Hunt*, 754 F.2d 1290, 1293–94 (5th Cir.1985); *In re Establish Inspection of the Metal Bank of America*, 700 F.2d 910, 913 (3d Cir.1983); *United States v. Trails End Motel*, 657 F.2d 1169, 1170 (10th Cir. 1981) (per curiam); *Marshall v. Whittaker Corp.*, 610 F.2d 1141, 1144 & n. 5, 1145 (3d Cir.1979); *SEC v. Sloan*, 535 F.2d 679, 680 (2d Cir.1976) (per curiam), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977); *FTC v. Stroiman*, 428 F.2d 808, 809

(8th Cir.1970) (per curiam). In this case, the district court entered an order finding that Mayor Arrington had fully complied with the subpoena and the January 2 order and had therefore completely purged his contempt. Accordingly, the Mayor's appeal of the order finding him in contempt must be dismissed as moot.[4]

## II.

By remaining recalcitrant for the first seven days of the district court's contempt order, Mayor Arrington accrued a $7000.00 fine. The district court did not absolve the fine; rather, in its order purging the Mayor of contempt, the court stated that "[a]ny sanctions imposed ... which have accrued to this point shall remain in full force and effect." Order Finding Compliance with the Order Entered on January 2, 1992, at 1 (N.D.Ala. Jan. 24, 1992) (No. CV–91–N–2922–S). The Mayor has not yet paid this civil contempt fine of $7000.00. On appeal, the Mayor attacks the propriety of this coercive fine.

■ As an initial matter, we note that Mayor Arrington cannot contest the validity of the fine by arguing that the district court erroneously held him in civil contempt. As previously mentioned, the Mayor extinguished his ability to contest the underlying civil contempt order by complying with that order and purging his contempt. *See supra* at pp. 671–72. Once a contemnor has purged his contempt, he

---

**2.** *See also* Evan T. Lee, *Deconstitutionalizing Justiciability: The Example of Mootness*, 105 Harv. L.Rev. 603, 610–12 (1992) (discussing the Article III underpinnings of the mootness doctrine).

**3.** This precedent blends well with the rule announced in *United States v. Ryan*, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971). *Ryan* holds that before an appeal contesting the validity of a grand jury subpoena will be ripe for review, the witness must first be in a state of contempt. *See id.* at 532–33, 91 S.Ct. at 1581–82; *see also Cobbledick v. United States*, 309 U.S. 323, 326–28, 60 S.Ct. 540, 541–42, 84 L.Ed. 783 (1940); *In re Grand Jury Proceedings (Subpoena to State Attorney's Office)*, 832 F.2d 554, 558 (11th Cir. 1987); *In re Grand Jury Proceedings (Fine)*, 641 F.2d 199, 201 (5th Cir. Unit A Mar.1981). It follows that in order for the appeal to remain ripe (*i.e.*, not become moot), the witness's state

of contempt must continue. Purging ends the state of contempt and thereby extinguishes any contempt appeal.

**4.** The Mayor correctly notes that the district court also denied his requests for affirmative relief. Specifically, in separate orders, the district court refused to quash the subpoena, refused to disqualify and/or enjoin the prosecutors, and refused to dissolve the grand jury. However, that the Mayor still desires this alternative relief does not create a justiciable controversy *about the district court's contempt order*. The controversy regarding contempt ended when Mayor Arrington complied with the district court's demands. We will not allow the Mayor to create an immediate appeal of these alternative issues by pinning them to his appeal of a moot contempt adjudication.

sacrifices his ability to challenge the merits of the underlying contempt order, regardless of the type of coercive sanction that was chosen by the district court.

In other words, in the context of purely coercive civil contempt, prison sanctions and monetary sanctions are analogous. The accrual of either type of sanction cannot be contested on the merits if the contemnor complies with the district court's order while his appeal is pending. "[T]he time [a contemnor] has spent in jail *until* performance of the mandatory act is irretrievable. Similarly, [Mayor Arrington] *could* have avoided all of the fines at issue here; once the court imposed the fines, however, they were analogous to the jail time a [contemnor] serves until performing the mandatory act.... [R]eason dictates that the [civil contempt] fines against the [Mayor] are irretrievable." *Clark v. International Union, United Mine Workers*, 752 F.Supp. 1291, 1301 (W.D.Va.1990). Because the Mayor chose to purge his contempt, he may not now avoid the $7000.00 fine by arguing the merits of the underlying contempt adjudication.[5]

■ Because the Mayor cannot attack the fine on the basis that he could have hypothetically continued to withhold the subpoenaed documents, he may only avoid the fine if it constituted an unreasonably coercive sanction. "The imposition of a coercive fine is not improper and will be reversed only for an abuse of discretion." *In re Grand Jury Proceedings (Bank of Nova Scotia)*, 740 F.2d 817, 832 (11th Cir. 1984) (citation omitted), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 778, 83 L.Ed.2d 774 (1985). For example, the district court may not impose a coercive fine which is clearly unreasonable in relation to the facts or which is wholly arbitrary. *See Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir.), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982); *IBM Corp. v. United States*, 493 F.2d 112, 116–17 (2d Cir.1973), *cert. denied*, 416 U.S. 995, 94

S.Ct. 2409, 40 L.Ed.2d 774 (1974). Because the "imposition of coercive sanctions by way of fines is generally an area in which appellate courts must rely heavily on the informed exercise of the district court's discretion," *In re Grand Jury Witness*, 835 F.2d 437, 443 (2d Cir.1987), *cert. denied*, 485 U.S. 1039, 108 S.Ct. 1602, 99 L.Ed.2d 917 (1988), we are reluctant to find unreasonableness or arbitrariness in the absence of clear abuse.

■ We have completely examined the record in this case. The district court's seven-day fine period of $1000.00 per day was clearly reasonable in relation to the facts. Limited in both duration and amount, the court's tailored sanction was only imposed to avoid the harms of the Mayor's continued recalcitrance and to induce immediate compliance with the district court's January 2 order. *See United States v. United Mine Workers*, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). The Mayor had ample opportunity to comply with the subpoena and the January 2 order prior to the accrual of monetary sanctions. Under these circumstances, we hold that the district court properly exercised its coercive civil contempt power and therefore AFFIRM the $7000.00 fine.

### III.

In this case, Mayor Arrington had a binary choice. First, the Mayor could have persisted in his refusal to surrender the subpoenaed documents and exercised his right to appeal his continued contumacy. Under such circumstances, however, the coercive sanctions chosen by the district court would have continued to accrue (unless stayed). In the alternative, the Mayor could have produced the requested material and ended his contumacy. Under these circumstances, however, the Mayor would sacrifice his ability to challenge the original contempt order, regardless of the type of

---

5. The cases cited by the Mayor do not dictate a contrary result. Those cases either dealt with contempt fines which were *criminal* in character, *e.g.*, *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1199–1200 (11th Cir.1985); *McDonald's*

*Corp. v. Victory Invs.*, 727 F.2d 82, 87 (3d Cir. 1984), or involved the refusal to pay an *underlying* attorney's fee award, *e.g.*, *Thomassen v. United States*, 835 F.2d 727, 731–32 (9th Cir. 1987).

sanctions which accrued prior to the purging of the contempt. The Mayor chose the latter course. Accordingly, we DISMISS AS MOOT that portion of the Mayor's appeal which asks us to decide if the Mayor could have hypothetically continued to ignore the grand jury subpoena. We also AFFIRM the $7000.00 fine as a legitimate exercise of the district court's ability to implement a reasonably coercive contempt sanction.

DISMISSED AS MOOT IN PART, AFFIRMED IN PART.