NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

NOV 28 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff - Appellee, <br><br> v. <br><br> C3 INTERNATIONAL, INC.; STEELE CLARKE SMITH III; THERESA SMITH, <br><br> Defendants - Appellants, <br><br> and <br><br> NICOLAS ARKELLS, <br><br> Defendant. | No. 24-5679 <br><br> D.C. No. 8:21-cv-01586-CAS-PD <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Submitted November 19, 2025[**]
Pasadena, California

Before: CLIFTON, BYBEE, and DE ALBA, Circuit Judges.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

In this civil enforcement action against C3 International, Inc. ("C3"), Steele Clarke Smith III ("Mr. Smith"), and Theresa Smith ("Mrs. Smith") (collectively, "Defendants"), the Securities and Exchange Commission ("SEC") alleged various violations, including securities fraud, failure to register, and misrepresentations to investors. After granting Defendants many extensions, the district court ultimately entered a default judgment against them. It also granted the SEC's request for remedies, issuing both injunctive and monetary relief. Defendants challenge the entry of default and the default judgment, as well as the relief granted by the district court. As the parties are familiar with the facts, we do not recount them at length here. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. We affirm the entry of default and the default judgment against all Defendants. "The issue on appeal is whether the district court erred in its entry of judgment by default pursuant to Fed. R. Civ. P. 55(b) against [Defendants], who chose not to file a Fed. R. Civ. P. 60(b)(1) motion to set aside that judgment." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1391 (9th Cir. 1988). This court has held that "a default judgment will not be disturbed if," among alternative grounds, "the defendant's culpable conduct led to the default." *Id.* at 1392.

That is the case here. Despite numerous extensions granted and warnings issued by the district court, including a finding of "significant concerns about [D]efendants' conduct in this case," Mr. and Mrs. Smith repeatedly failed to appear

at court-scheduled hearings, and they sent the district court numerous email communications in lieu of proper filings.  They fault the district court for not showing leniency on account of their pro se status, arguing that they experienced difficulties with Zoom technology and the district court's docketing system.  But the record belies this claim: despite failing to appear at three court-scheduled Zoom hearings, Mr. and Mrs. Smith successfully and timely joined three others, and properly filed a number of documents that were entered into the docket.  Accordingly, acting in its sound discretion, the district court concluded that Mr. and Mrs. Smith exhibited a "pattern" of "intentional conduct to avoid adjudication of the issues in this case."  Further, "it is axiomatic that pro se litigants, whatever their ability level, are subject to the same procedural requirements as other litigants," *Muñoz Gonzalez v. United States*, 28 F.4th 973, 978 (9th Cir. 2022), and by granting numerous extensions, the district court clearly showed Mr. and Mrs. Smith considerable leniency—likely more than what was due.

Further, the district court did not abuse its discretion in weighing the relevant factors in favor of entering default judgment.  *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  Considering each of the seven *Eitel* factors, the district court concluded that all but one weighed in favor of default judgment.  While noting "the strong policy favoring decisions on the merits," the district court also reasoned that Mr. and Mrs. Smith's repeated failure to appear made a decision

on the merits "impractical, if not impossible." *See also NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) ("[O]ur role is not to second guess the district court's weighing of the *Eitel* factors.").

The default judgment against C3 was also appropriate. The district court twice admonished Defendants that C3 needed to retain counsel. "It is a longstanding rule that corporations . . . must appear in court through an attorney." *D-Beam, Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973–74 (9th Cir. 2004) (citation modified). C3 failed to do so, and Defendants do not raise the issue in their opening brief, resulting in forfeiture. We have previously concluded, and we conclude now, that entry of default judgment against a corporation based on its failure to retain counsel is "perfectly appropriate." *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam).

2. With the default judgment entered against Defendants, the district court proceeded to grant the SEC relief by issuing injunctions, imposing civil penalties, and ordering disgorgement and prejudgment interest. As the district court correctly observed, "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). We review a district court's grant of remedies for an abuse of discretion, *see SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096, 1099 (9th Cir. 2010), and

we affirm.

We see no abuse of discretion in the district court's decision to issue injunctive relief. In the context of injunctions, courts generally consider the five factors articulated in *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). Taking the allegations in the complaint as true, the district court properly concluded that Defendants' conduct involved "an ongoing fraud perpetrated over many years," and properly inferred both scienter and recurrence. The district court also reasonably concluded that Defendants' repeated failure to appear weighed against any showing that they acknowledged their wrongdoing. In the absence of specific arguments from Defendants demonstrating error, we decline to interfere with the district court's discretion in considering the *Murphy* factors.

We affirm the imposition of civil penalties. Relying on its previous finding that Defendants' conduct "satisfied the *Murphy* factors," the district court properly concluded that Defendants' fraudulent conduct, coupled with substantial losses to multiple investors, warranted a third-tier civil penalty. The district court then multiplied the available maximum statutory amount for a third-tier civil penalty by three, accepting the SEC's contention that Defendants each offended securities laws three times by violating three distinct statutory provisions. We see no abuse of discretion in this calculation that remains within the maximum statutory amount. Furthermore, as we have previously held, district courts have "broad discretion to

rely on various proxies to determine the number of violations," including, for example, the number of unregistered transactions or the number of months of unregistered activity. *SEC v. Barry*, 146 F.4th 1242, 1266 (9th Cir. 2025). The number of statutory provisions violated is one such proxy. The reasonableness of the civil penalties is further reinforced by the fact that the district court did not consider alternative proxies that would have resulted in considerably higher penalties.

We also affirm the disgorgement award with prejudgment interest. In awarding disgorgement, the district court relied on declarations submitted by the SEC. The SEC declarations were prepared after a review of C3's financial records, including bank statements, deposits, checks, and wire transfers. The SEC determined that the amounts shown on C3's stock ledger that were deposited into C3's bank accounts totaled approximately $1,914,017. Defendants argue that "[t]he SEC . . . does not explain why it is not able to offer precise details instead of 'approximately' and 'about.'" But this misconstrues the law: the SEC's burden is to formulate a reasonable *approximation*, after which the onus shifts to Defendants to explain why the SEC's calculation is not reasonable. *See Platforms Wireless Int'l Corp.*, 617 F.3d at 1096. Defendants offer no such explanation, and we see no reason to disturb the district court's reliance on the SEC's approximation.

**AFFIRMED**.